FILED
U.S. DISTRICT COURT
2010 JUL -2 PM 1:49
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 110-041 |
| | ) | |
| CHARLES ANTHONY DAVIS | ) | |

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In the above-captioned criminal case, the government has accused Defendant Charles Anthony Davis of Possession with Intent to Distribute Marijuana, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, and Possession of a Firearm by a Convicted Felon. (Doc. no. 1.) The matter is now before the Court on Defendant's motions to suppress and request for an evidentiary hearing. (Doc. nos. 11-1, 27-1, 27-2.) For the reasons developed below, the Court **REPORTS** and **RECOMMENDS** that the motions to suppress be **DENIED** without an evidentiary hearing.

## I. REQUEST FOR EVIDENTIARY HEARING

On April 28, 2010, Defendant filed a "Preliminary Motion to Suppress and Request for Extension of Time to Particularize Motion." (Doc. no. 11.) In that April 28th motion, defense counsel requested permission to particularize a request to suppress "all physical evidence seized, as well as any statements made . . . to government agents, in violation of . . . Defendant's rights under the Fourth and Fifth Amendments to the United States Constitution and analogous provisions of the Constitution of the State of Georgia and 18

U.S.C. Section 2510 et. seq." (Id. at 1.) In particular, counsel asked for "additional time to review the hearing transcript" from the April 22, 2010 detention hearing in this case with respect to a conversation between his client and the case agent before particularizing his motion. (Id. at 2.) Although Defendant requested a 60-day extension of time, the Court granted a 30-day extension, noting in particular that the undersigned was concerned that counsel had not even requested that the detention hearing be transcribed at the time the request for an extension had been filed. (Doc. no. 21, p. 3.) The Court also pointed out that because Defendant was a party to the conversation with the case agent that counsel intended to challenge, there was "no reason why counsel cannot immediately obtain particularized details about the conversation from [Defendant]." (Id. at n.2.) Moreover, the Court specifically explained the requirements of Loc. Crim. R. 12.1 with respect to providing evidentiary support for a motion and included the admonition, "Any supporting affidavit should set forth the specific factual allegations upon which Defendant bases his contention that his rights were violated. . . ." (Id. at 4.)

The Court's order granting an extension of time also spelled out the requirements that would be considered in deciding whether to grant a request for an evidentiary hearing.

> The decision to grant or deny a request for an evidentiary hearing on a motion to suppress is left to the Court's discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000); United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (*per curiam*). "[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony o every motion." United States v. Lewis, 40 F.3d 1325, 1332 (1st Cir. 1994) (affirming denial of a motion for evidentiary hearing on motion to suppress) (citation omitted).
>
> A district court should grant a request for an evidentiary hearing when the moving papers, including the affidavits, are "sufficiently definite,

2

> specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (quoting United States v. Poe, 462 F.2d 195, 197 (5th Cir. 1972)). However, a district court is not compelled to grant an evidentiary hearing when a defendant promises to allege at a hearing what he has failed to allege in his motion papers. Cooper, 203 F.3d at 1285. Thus, the burden is upon Defendant to allege facts that would, if proven true, entitle him to relief. Lewis, 40 F.3d at 1332.

(Id. at 1-2.)

Although Defendant filed his "particularized" motion and request for an evidentiary hearing, upon review of the filing and in light of the above-stated standards, the Court finds no reason for holding an evidentiary hearing. First, there is no affidavit from Defendant in support of his version of events. Although Defendant was a participant in the conversation with the case agent that he now claims was improper, there is nothing from Defendant to support the conclusory allegations made by counsel in the motion concerning what happened during that conversation.[1] However, because Defendant's attorney has no first-hand knowledge of what transpired during the conversation with the case agent, he (counsel) is unable to create issues of fact that would necessitate an evidentiary hearing.

Second, although counsel attached documents to the "particularized" motion and provided a list of questions he would like to ask the case agent about the information in those documents, the attachments do not persuade the Court that a substantial claim has been

---

[1] As Defendant was a participant in the conversation with the case agent on April 15, 2010, the assertion in the motion to suppress that he "is entitled to an evidentiary hearing to fill in the blanks of this clearly summarized conversation" recounted in the Report of Investigation filed by the case agent is particularly puzzling. (Doc. no. 27, p. 8.) As Defendant was present, he could have "fill[ed] in the blanks" for counsel as to his version of what occurred, and if his version differed from that of the case agent and had been offered in an affidavit, then he might have been able to create issues of fact necessitating an evidentiary hearing.

3

presented. As discussed in detail below, many of the questions that counsel wants to ask have already been asked and answered at the detention hearing.[2] Thus, in the absence of an affidavit from Defendant, the record contains nothing to contradict the case agent's version of events that transpired during his conversation with Defendant, and as discussed below, that version of events does not persuade the Court that a substantial claim has been presented. Therefore, the request for an evidentiary hearing should be **DENIED**.

## II. FACTS[3, 4]

On November 11, 2009, Deputy Alice M. Quarterman ("Dep. Quarterman") with the Richmond County Sheriff's Department ("RCSD") effectuated a traffic stop on a white Chevrolet Corsica with Georgia tag number BDJ-6705 for running a red light. (Doc. no. 27, Ex. A.) According to the Incident Report filed by Dep. Quarterman, the driver of the Corsica pulled into a parking lot and fled on foot onto the campus of Paine College. (Id.) When Dep. Quarterman approached the vehicle, she observed a brown plastic bag on the front passenger seat that contained four clear plastic bags that appeared to hold marijuana; there

---

[2]The record does not reflect that defense counsel sought to have a transcript of the detention hearing prepared, even though he based his original request for an extension of time, at least in part, on a stated intention to do so. Nevertheless, the Court has been able to review the proceedings on the Court's recording system, For the Record ("FTR").

[3]The facts are based on the information in Defendant's "particularized" motion to suppress and supporting memorandum, as well as on the government's response thereto. (Doc. nos. 27, 30.)

[4]In his "particularized" motion to suppress, Defendant abandons his request for suppression of evidence based on any allegedly improper searches and / or seizures and instead limits his request for suppression to statements Defendant may have made. (Doc. no. 27, pp. 1-2, 9.) Therefore, the Court will limit its presentation of relevant facts and pertinent legal analysis to the challenged statements made by Defendant to the case agent.

4

was also a Raven R 25 caliber hand gun with a magazine holding four bullets on top of the brown plastic bag. (Id.) Sgt. Hitchcock, also with the RCSD, located Defendant on the campus of Paine College. (Id.) The substance in the four clear plastic bags field tested positive for marijuana, and a records check on Defendant revealed that he had a prior record. (Id.)

Defendant was originally charged on January 5, 2010, in the Superior Court of Richmond County, Indictment No. 2010-RCCR-38, with the following offenses: (1) Possession of Marijuana with the Intent to Distribute; (2) Possession of a Firearm During the Commission of a Crime; (3) Obstruction of a Law Enforcement Officer; (4) Failure to Obey a Traffic Control Device; (5) Driving with a Suspended License; and (6) Possession of a Firearm by a Convicted Felon. (Doc. no. 27, Ex. B, p. 1.) At his arraignment on the state charges on January 22, 2010, appointed counsel, Rahmann Bowick of the Public Defender's Office, entered a "not guilty" plea on Defendant's behalf. (Doc. no. 27, Ex. C.) Prior to arraignment, appointed counsel filed motions on Defendant's behalf, and when Jacque Hawk was retained to represent Defendant on the state charges, he, too, filed motions on Defendant's behalf that were dated March 22, 2010. (Doc. no. 27, Ex. C.)

While the charges against Defendant made their way through the state system, Special Agent Ronald Rhodes, Jr. ("SA Rhodes"), with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), had also been conducting his own investigation, and in February, 2010, made a Recommendation for Prosecution to the office of the United States Attorney

5

for the Southern District of Georgia based on the events of November 11, 2009.[5] (Doc. no. 27, Ex. E.) In particular, SA Rhodes recommended federal prosecution on the three charges now pending in this case (id. at 2), and a federal grand jury returned an indictment against Defendant on February 3, 2010 (doc. no. 1). Sgt. Jason Vinson with the RCSD arrested Defendant pursuant to a federal arrest warrant on April 14, 2010 (doc. no. 27, Ex. F, p. 1), and on April 15, 2010, SA Rhodes went to the Richmond County Jail ("RCJ") to transport Defendant to the Federal Courthouse for an initial appearance and arraignment on the federal charges. (Id.) SA Rhodes was aware of the pending state charges at the time he went to the RCJ on April 15, 2010.[6] (FTR 11:12.18-.30; 11:18.49-.52; 11:19.40-.57.)

When SA Rhodes arrived at the RCJ, he did not advise Defendant of his rights pursuant to Miranda v. United States, 384 U.S. 436 (1966), prior to having a conversation with Defendant while the RCJ processed Defendant out for his initial appearance and arraignment in Federal Court.[7] (FTR 11:13.25-.48; 11:18.18-:20.04.) In his sworn testimony

---

[5]The timing of the Recommendation for Prosecution is somewhat confusing because the front page of the Recommendation says that it was approved by the Special Agent in Charge on February 9, 2010 (doc. no. 27, Ex. E), but the indictment in this case was returned by the grand jury on February 3, 2010 (doc. no. 1).

[6]Although SA Rhodes knew that state charges were pending against Defendant based on the same events forming the basis of the federal charges, he did not recall knowing exactly who represented Defendant on those charges until he specifically asked Defendant during the ride to the Federal Courthouse so that he could alert the Court's deputy clerk. (FTR 11:21.33-:22.04; doc. no. 27, Ex. F, p. 2.) In any event, the sequence of knowledge as to who Defendant's attorney was in the state proceedings is not relevant to the issues currently before the Court because, as discussed below, SA Rhodes did not interrogate Defendant on April 15, 2010.

[7]The well-known warnings that must be given to a person subject to custodial interrogation are:
(continued . . . )

6

before this Court at the April 22, 2010 detention hearing, SA Rhodes explained that he introduced himself to Defendant as a federal agent, and Defendant asked why ATF was involved in the case. SA Rhodes explained that ATF was involved because of the firearm-related charges, and Defendant then stated that the firearm in this case came from his girlfriend, who had been murdered years ago by an ex-boyfriend. (FTR 11:12.04-.41; 11:18.18-:20.30; doc. no. 27, Ex. F, p. 2.) SA Rhodes specifically testified, more than once, that he did not ask any questions to prompt Defendant for information about the firearm; Defendant volunteered the information to SA Rhodes during the course of the conversation in which Defendant had initially asked the question concerning why ATF was involved in the case. (FTR 11:12.04-.41, 11:18.18-:20.30.) Once Defendant volunteered the information about his girlfriend and the gun, SA Rhodes extended his condolences and asked for clarifying information as to when and where Defendant's girlfriend had been murdered. (FTR 11:20.00-.31; doc. no. 27, Ex. E, p. 2.)

Despite defense counsel's attempts to cast doubt on the circumstances of the conversation between SA Rhodes and Defendant at the RCJ on April 15, 2010, Defendant has provided *absolutely no evidence* to contradict the sworn testimony of SA Rhodes that no questioning or interrogation took place.[8] Rather, the only credible evidence in the record is

---

> [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Florida v. Powell, 130 S. Ct. 1195, 1203 (2010) (citing Miranda, 384 U.S. at 479).

[8]SA Rhodes calmly and consistently testified that he did not question Defendant or otherwise prompt him for information about the firearm at issue in this case. When pressed

7

that on April 15, 2010, SA Rhodes went to the RCJ to pick up Defendant and transport him to the Federal Courthouse for his initial appearance and arraignment on federal firearms and narcotics charges. During the course of processing Defendant out of RCJ and transporting him to court, SA Rhodes had a conversation, prompted by a question from Defendant, as to why the ATF was involved in the case. After SA Rhodes answered Defendant's question about ATF's involvement in the case, Defendant volunteered that the firearm at issue in this case had belonged to his girlfriend who had been murdered several years ago.

### III. ANALYSIS

#### A. Failure to Comply with Local Rules

Without even reaching the merits of the motions to suppress, they are subject to summary denial because they were not filed in compliance with the Court's Local Rules. Specifically, under Loc. Crim. R. 12.1:

> Unless otherwise ordered by the Court, every motion filed in a criminal proceeding shall be accompanied by a memorandum of law citing supporting authorities. Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion. Where allegations of fact are relied upon that are not supported by the existing record, supporting affidavits shall be submitted.

---

both by defense counsel and the undersigned, SA Rhodes did not waiver from his stance that Defendant volunteered the information about the firearm without prompting or question. Credibility determinations belong to the hearing judge, and are entitled to deference unless they reflect an "unbelievable" understanding of the facts. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing that credibility determinations are within the province of the factfinder). In making a credibility determination, the Court must consider "the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand." Ramirez-Chilel, 289 F.3d at 750. Having considered the relevant factors, the Court credits the sworn testimony of SA Rhodes concerning the circumstances of his conversation with Defendant on April 15, 2010.

8

Here, as discussed in detail, *supra*, despite filing a "particularized" motion after the Court cautioned counsel about compliance with Loc. Crim. R. 12.1, there is no affidavit from Defendant supporting his version of events. Although counsel references certain pages of discovery concerning (1) the events of November 11, 2009 forming the basis for the current charges, (2) pre-trial proceedings involving Defendant and his attorney(s) in the state court system, and (3) a Report of Investigation prepared by SA Rhodes about his interaction with Defendant on April 15, 2010, none of these discovery documents provide any particularized support for Defendant's position that he was improperly interrogated by SA Rhodes without the benefit of Miranda warnings or the assistance of counsel. Thus, the necessary factual details to support Defendant's arguments for suppression are lacking. Stated otherwise, there is nothing in the record to support the assertion that Defendant and SA Rhodes were engaged in anything other than a permissible conversation on April 15, 2010. The only information offered in support of Defendant's theory that his Fifth and /or Sixth Amendment rights were violated is the suppositions posited by defense counsel. Accordingly, the motions to suppress should be **DENIED** for failing to comply with the Local Rules. See, e.g., United States v. Farese, 451 F.2d 564, 566 (5th Cir. 1971) (finding no error in denial of criminal pre-trial motions for failing to comply with local rules).[9]

### B. No Violation of Defendant's Fifth or Sixth Amendment Rights

Although the Court has concluded that the motions to suppress do not comply with the Local Rules, as discussed below, the Court also concludes that there is no legal merit to

---

[9] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

the arguments for suppression offered by Defendant. "Defendant relies principally on his Sixth Amendment rights" in making his request for suppression of his statement to SA Rhodes on April 15, 2010, (doc. no. 27, p. 6), but he also relies on his Fifth Amendment right against self-incrimination (id. at 7). The government argues that Defendant's statement to SA Rhodes should not be suppressed under either cited Amendment. (See generally doc. no. 30, pp. 4-6.) As discussed below, regardless of whether Defendant relies on the Fifth or the Sixth Amendment, his statement is not due to be suppressed because he cannot surmount the initial hurdle of showing that he was subjected to interrogation or its functional equivalent.

"No person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend V. "To give force to the Constitution's protection against compelled self-incrimination, the Court established in Miranda 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.' " Powell, 130 S. Ct. at 1203 (citing Duckworth v. Eagan, 492 U.S. 195, 201 (1989)). The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Notably, however, Miranda applies not only when a person in custody faces express questioning, but also when the person in custody faces the "functional equivalent" of questioning. Rhode Island v. Innis, 446 U.S. 291, 301 (1980). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

incriminating response from the suspect." Id. That is, interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself," (id. at 300), and when analyzing whether police should know that their words or actions are reasonably likely to prompt an incriminating response, the Court must focus "primarily upon the perceptions of the suspect, rather than the intent of the police" (id. at 301).

The consequences of the failure to honor the rights protected by the Miranda warnings are clear, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda, 384 U.S. at 444. Nevertheless, "[v]oluntary and spontaneous comments by an accused, even after Miranda rights are asserted, are admissible evidence if the comments were not made in response to government questioning." Cannady v. Dugger, 931 F.2d 752, 754 (11th Cir. 1991); see also United States v. Suggs, 755 F.2d 1538, 1541 (11th Cir. 1985) (explaining that incriminating statement made in response to interrogation after invocation of right to remain silent would be inadmissible as violative of the Fifth and Sixth Amendments but concluding that spontaneous exclamation not prompted by questioning was admissible); United States v. Satterfield, 743 F.2d 827, 849 (11th Cir. 1984) ("Incriminating statements made in the course of casual conversation are not products of custodial interrogation."); United States v. Glen-Archila, 677 F.2d 809, 814-15 (11th Cir. 1982) (holding that spontaneous and voluntary statement made in absence of Miranda warnings is admissible); United States v. Hicks, 546 F. Supp.2d 1378, 1381 (N.D. Ga. 2008) (finding

that volunteered, spontaneous statements not offered in response to interrogation or functional equivalent are not subject to Fifth Amendment protections).

While the Fifth Amendment provides protection against compelled self-incrimination, the Sixth Amendment states that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel granted by the Sixth . . . Amendment[] means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " Brewer v. Williams, 430 U.S. 387, 398 (1977); United States v. Hidalgo, 7 F.3d 1566, 1569 (11th Cir. 1993) ("The right to counsel attaches once adversary judicial proceedings have been initiated against the defendant."). Notably, however, the Supreme Court has clarified that this Sixth Amendment protection applies when the government interrogates, or otherwise deliberately elicits information from, a person against whom judicial proceedings have been initiated. Brewer, 430 U.S. at 400, 401, 405. Moreover, the Supreme Court has made clear that law enforcement cannot "intentionally creat[e] a situation likely to induce [an individual] to make incriminating statements without the assistance of counsel" because to do so would violate the Sixth Amendment. United States v. Henry, 447 U.S. 264, 274 (1980). Notably, however, "the Sixth Amendment is not violated whenever - 'by luck or happenstance' - the government obtains incriminating statements from the accused after the right to counsel has attached. . . ." United States v. Terzado-Madruga, 897 F.2d 1099, 1110 (11th Cir. 1990).

As explained above, the Court's focus in determining whether Defendant was subjected to express questioning or its functional equivalent belongs on the perceptions of Defendant. Innis, 446 U.S. at 301. Although Defendant failed to provide any evidence in the form of an affidavit about his perceptions of the interaction with SA Rhodes,[10] the testimony of SA Rhodes at the detention hearing leads the Court to conclude that Defendant did not perceive that he was being interrogated or otherwise prompted for incriminating information. Specifically, the credible, and uncontroverted, evidence in the record shows that SA Rhodes arrived at the RCJ to transport Defendant to his initial appearance and arraignment on the federal charges pending in this case. When SA Rhodes introduced himself as an ATF agent, *Defendant* asked why the ATF was involved in his case. Had he perceived that SA Rhodes was attempting to interrogate him or elicit an incriminating response, there would have been no reason for *Defendant* to engage SA Rhodes in conversation after introductions were complete.

Additionally, the Court does not view the response from SA Rhodes explaining that the ATF becomes involved with firearm-related charges as designed to elicit an incriminating response. To the contrary, *Defendant* asked a general question about ATF's involvement in the case, and he got a general answer. That Defendant then spontaneously volunteered information about where the firearm came from that he has been charged with possessing was not the result of any impermissible actions taken by SA Rhodes. There simply is no evidence in the record that SA Rhodes interrogated Defendant on April 15, 2010, subjected

---

[10] As discussed in detail above, Defendant was provided ample opportunity to present the Court with evidentiary support for his theory of suppression, but he chose not to do so.

Defendant to the functional equivalent of interrogation, or otherwise acted in a manner reasonably likely to elicit an incriminating statement from Defendant.

As to the questions that defense counsel would like to ask SA Rhodes at an evidentiary hearing in order to "fill in the blanks" (doc. no. 27, pp. 6-7) about the April 15, 2010 conversation, they have either already been answered at the detention hearing, or have nothing to do with the Court's analysis as to whether Defendant was subjected to an interrogation or its functional equivalent. For example, there is no need to ask SA Rhodes if he advised Defendant of his rights under Miranda because SA Rhodes already testified that he did not. (FTR 11:13.00-.05.)[11] SA Rhodes also testified that he was aware of the pending state charges when he went to the RCJ on April 15, 2010. (FTR 11:12.18-.30; 11:18.49-.52; 11:19.40-.57.) Although SA Rhodes testified that he did not know that Mr. Hawk represented Defendant on the pending state charges until after the incriminating statement was made, the issue of knowledge about representation would not come into play unless and until Defendant could show that he was subjected to an interrogation or its functional equivalent; he has not done so.

As to whether the information provided by SA Rhodes concerning the involvement of the ATF in the case because of the firearm-related charges was designed to elicit an incriminating response from Defendant, that, too, has been refuted by the testimony of SA Rhodes. That is, SA Rhodes testified at least three times at the detention hearing that it was Defendant himself who asked the question why SA Rhodes and the ATF were involved in

---

[11]In any event, as Defendant's statements were not made in response to interrogation, the recommendation on suppression does not turn on the issue of Miranda warnings. Cannady, 931 F.2d at 754.

14

the case and/or why the case was going to federal court. (FTR 11:12.12-.30; 11:18.18-.42; 11:19.19-.36.) Nowhere in the record does Defendant deny asking such a question. Thus, the Court rejects the unsubstantiated suggestion by defense counsel that the response from SA Rhodes to Defendant's own question "was designed to get the Defendant to start talking" (doc. no. 27, p. 7).

Finally, to the extent Defendant suggests that the clarifying question from SA Rhodes concerning when and where Defendant's girlfriend was murdered impermissibly expanded the scope of the volunteered statement, that contention is rejected. See Hicks, 546 F. Supp.2d at 1382-83 ("[A]bsent extraordinary circumstances, a court may generally conclude that follow-up questions asking only for volunteered information to be repeated or spelled do not constitute interrogation. The same might also easily apply to discrete questions seeking confirmation of what appears implicit in the volunteered disclosure." (citation omitted)). A question seeking clarification of where and when Defendant's girlfriend was killed several years ago does not expand the scope of volunteered information concerning how Defendant came to have the firearm that he has been charged with illegally possessing.

In sum, Defendant was not subjected to an interrogation or its functional equivalent, and SA Rhodes did not take any actions designed to elicit an incriminating statement by Defendant when he answered the question posed by Defendant concerning the involvement of ATF in the case. Thus, nothing in the record supports a recommendation for suppression of any statements made by Defendant to SA Rhodes on April 15, 2010, during his processing

out of the RCJ and transport to the Federal Courthouse for his initial appearance and arraignment on the charges in the current case.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motions to suppress be **DENIED** without an evidentiary hearing. (Doc. nos. 11-2, 27-1, 27-2.)

SO REPORTED and RECOMMENDED this __ day of July, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE