IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JAN 15 PM 3:32
CLERK _____
SO. DIST. OF GA.

CHARLES ANTHONY DAVIS,          )
                               )
          Petitioner,          )
                               )
     v.                        )  CV 111-198
                               )  (Formerly CR 110-041)
UNITED STATES OF AMERICA,       )
                               )
          Respondent.          )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate confined to federal custody at FCI Fort Dix in Fort Dix, New Jersey, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss Petitioner's § 2255 motion. (Doc. no. 6.) Petitioner opposes the motion. (Doc. no. 7.) For the reasons set forth below, Respondent's Motion to Dismiss should be **GRANTED**.

## I.     BACKGROUND

On February 3, 2010, a federal grand jury indicted Petitioner on three counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e); (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and, (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). United States v. Davis, CR 110-041, doc. no. 1 (S.D. Ga. Feb. 3, 2010) (hereinafter "CR 110-041"). Because the first count charged Petitioner as being a felon in possession of a firearm and also charged that he had committed prior felonies within

the definition of § 924(e), the indictment listed, as part of the first count, six predicate felonies for which Petitioner had been convicted: (1) Burglary, on July 31, 1986; (2) Violation of Georgia Controlled Substances Act (Possession with Intent to Distribute Cocaine), on January 28, 1991; (3) Possession of a Firearm by a Convicted Felon, on January 6, 1992; (4) Violation of Georgia Controlled Substances Act, on January 6, 1992; (5) Possession of a Firearm by a Convicted Felon, on November 7, 1997; and, (6) Violation of Georgia Controlled Substances Act (Sale of Cocaine), on October 29, 1999.[1] Id. Pursuant to a written plea agreement, Petitioner pled guilty to the first count, felon in possession of a firearm. Id., doc. no. 43.

Petitioner's plea agreement included a broad appeal and collateral attack waiver provision that stated in relevant part:

> Understanding that federal law and rules provide for an appeal by a defendant of the conviction and sentence under certain circumstances, as a part of this agreement and in consideration for the government's promises hereunder, to the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum, and the defendant may file a direct appeal of his sentence if, by variance or upward

---

[1]Under § 924(e), "a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g)." According to § 4B1.4 of the Federal Sentencing Guidelines, "A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." To that end, the government's Penalty Certification for the first count in CR 110-041 provided that "[i]f Defendant is deemed to be an armed career criminal under 18 U.S.C. § 924(e)," then he would be subject, *inter alia*, to a mandatory minimum sentence of 15 years. See CR 110-041, doc. no. 2.

departure, the sentence is higher than the advisory sentencing guideline range
as found by the sentencing court.

Id. at 4-5. Petitioner also attested that he understood that count one charged that he had committed the six predicate felonies listed in the indictment. Id. at 4-6. Finally, Petitioner attested that he had read and understood the plea agreement, and that the plea agreement accurately set forth the terms and conditions of his agreement with the government. Id. at 11.

The Honorable J. Randal Hall, United States District Judge, held a Rule 11 hearing on November 10, 2010. During that hearing, Judge Hall read the indictment aloud, including reading each of the six predicate felonies listed in the indictment under count one. Id., doc. no. 56, pp. 4-6 (transcript of Rule 11 hearing). Judge Hall then questioned Petitioner to determine whether he was mentally competent to plead guilty. Id. at 7-10. Judge Hall asked Petitioner if he could read and write, and Petitioner responded, "Some. Yeah. Yeah, not good. But you know what I'm saying." Id. at 9. Petitioner also testified that he had never been treated for a mental illness, that he had not had any alcohol or drugs in the last three days, and that the only prescription medication he was taking was for his blood pressure. Id. at 9-10.

Judge Hall asked Petitioner whether he was satisfied with the help that he received from his retained counsel, Jacque Hawk, to which Petitioner initially responded, "I'm satisfied, but, you know, the other attorney I was appointed to . . . I hired [counsel at plea hearing] for like a better deal. But, you know, I came up with the same deal." Id. at 10-11. Upon further questioning about whether he was satisfied with his attorney, however, Petitioner responded, "Yes, sir. Yes, sir. Definitely." Id. at 11. Judge Hall then explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 10-14.

Ronald Rhodes, Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, then testified as to the factual basis for the plea. Id. at 15-17. Specifically, Special Agent Rhodes testified that Petitioner had been convicted of six felony offenses: three of which were for violations of the Georgia Controlled Substances Act; two of which were possession of a firearm by a convicted felon; and the last of which was a burglary. Id. at 17. When asked if he disagreed with anything Special Agent Rhodes testified to, Petitioner responded "No, sir." Id. at 18. Judge Hall then asked Petitioner if he admitted that he "had previously been convicted of the felony offenses that are listed in Count One of the indictment," to which Petitioner responded, "Yes, sir." Id.

Petitioner then testified that he had reviewed the plea agreement with his attorney before he signed it, and that he understood that he was agreeing that whatever facts were contained in the agreement were true. Id. at 18-19. In addition, Judge Hall reviewed the appeal and collateral attack waiver with the Petitioner, summarizing it as follows:

> [Y]ou also agree that you will waive your right to appeal this sentence. Now, normally you have a right to appeal any conviction and sentence to the Court of Appeals, in this case, the Eleventh Circuit. However, in this agreement you've signed – you've agreed, rather, to give up your right to attack your conviction and sentence in a post conviction proceeding.
>   Now, there are two conditions attached to that waiver. The first is that if this Court should sentence you to a sentence that is more than what the law allows then you would have a right to appeal that sentence. In addition, if this Court were to sentence you outside of the sentencing guideline range that is applicable to your case, then if it's more than what the sentencing guidelines provide for, then you would also have the right to appeal. Otherwise, by signing this plea agreement, you are giving away your right to appeal. Do you understand that?

Id. at 20. Petitioner testified that he understood. Id.

Judge Hall then explained that the minimum penalty for Petitioner's crime was 15 years and the maximum was life, along with a fine of not more than $250,000.00 and a term of

4

supervised release of not more than five years. Id. at 21. Petitioner affirmed that he understood. Id. Petitioner also averred, in response to questions asked by Judge Hall, that no one had promised him a specific sentence, or "anything to get [him] to come to court and plead guilty." Id. at 23-24. He further swore that no one had "forced" or "pressured" him to plead guilty. Id. at 24. Judge Hall then asked if Petitioner still wanted to plead guilty to Count One, to which Petitioner responded, "Yes, sir." Id. Judge Hall thus found that Petitioner was competent, that he fully understood the charges against him, and that his plea was "voluntary, knowing, and not the result of any force, pressure, threats, or promises other than the promises made by the Government in the plea agreement." Id. at 25.

After the guilty plea hearing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI provided that Petitioner was an "armed career criminal" based on his convictions for burglary (¶ 27), possession with intent to distribute cocaine (¶ 28), and sale of cocaine (¶ 30). PSI ¶ 23. The PSI further provided that Petitioner's conviction for Burglary, as "verified by Shepard documents," had been for Petitioner's entering "the home of [victim]…with the intent to commit a theft."[2] Id. ¶ 27. The PSI also provided that Petitioner had prior convictions for possession with intent to distribute cocaine and for Petitioner's sale of cocaine, which were also "verified by Shepard documents." Id. ¶¶ 28, 30. Petitioner did not object to the contents of the PSI. CR 110-041, doc. no. 55, p. 4 (sentencing

_____

[2]According to Shepard v. United States, 544 U.S. 13, 26 (2005), when a prior burglary conviction was obtained by a guilty plea, the sentencing court is limited to looking at certain documents -- namely, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information" -- in determining whether the conviction qualifies as a "burglary" for purposes of § 924(e)(2)(B).

5

hearing transcript).

During Petitioner's sentencing hearing, which was held on February 17, 2011, Judge Hall found, consistent with the PSI, that Petitioner had a total offense level of 31 and a criminal history category of VI, which resulted in an advisory Sentencing Guidelines range of 188 to 235 months of imprisonment, as well as three to five years supervised release, $15,000 to $150,000 in fines, and a $100.00 special assessment. Id. at 5. Judge Hall then sentenced Petitioner to serve the statutory minimum 180-month term of imprisonment, a downward variance from the advisory Guidelines' range, fined him $1000.00, and ordered him to pay a special assessment of $100.00 and to be placed on supervised release for five years. Id. at 13-15. Judge Hall also noted that Petitioner had waived the right to appeal or to attack the sentence in any post conviction proceeding. Id. at 17. Petitioner did not appeal.

Petitioner then timely filed the instant § 2255 motion. (Doc. no. 1, pp. 1, 14.) Petitioner raises two grounds for relief. In his first ground, which has three subparts, Petitioner alleges counsel was ineffective for: (1) failing to request a competence evaluation before Petitioner entered his guilty plea, (2) failing to investigate the "legal authentication of the alleged priors used to support the fact[] finding required," and, (3) failing to object to the "illegal enhancements" to Petitioner's sentence under § 924(e). (Id. at 5, 21, 25.) In Ground Two, Petitioner asserts that the sentencing court failed to ensure the authentication of the convictions used to enhance his sentence as required by Shepard v. United States, 544 U.S. 13 (2005), and that two of his convictions did not qualify for enhancement under § 924(e). (Id. at 6.) In its motion to dismiss, Respondent contends that Petitioner's § 2255 motion should be dismissed because his claims are either barred by the collateral attack waiver in his plea agreement or otherwise lack merit. (See doc. no. 6, pp. 9-17.) Petitioner filed a response to

the motion to dismiss, which includes a request for an evidentiary hearing. (Doc. no. 7.) The Court resolves the matter as follows.

## II.    DISCUSSION

### A.    No Need For Evidentiary Hearing

Petitioner requests an evidentiary hearing in his response to Respondent's motion to dismiss. (Doc. no. 7, p. 12.) With regard to that request, the Eleventh Circuit follows the general rule "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. Id. Stated another way:

> Notwithstanding this legislative mandate, it is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

Stephens v. United States, 14 F. Supp. 2d 1322, 1334 (N.D. Ga. 1998) (citation omitted).

As described in detail below, the Court finds that Petitioner's claims are barred from review, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record. Thus, no evidentiary hearing is necessary in this case.

### B.    Effect Of Collateral Attack Waiver In The Plea Agreement

#### 1.    Knowing and Voluntary Nature of Waiver

Petitioner appears to claim in his reply to the government's response that his waiver of the rights to appeal and collaterally attack his sentence is void. (See doc. no. 7.) To that

end, it is well settled that a waiver of the right to collaterally attack a sentence is only enforceable if the waiver is knowing and voluntary. United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); Bushert, 997 F.2d at 1345.[3] "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. Thus, if the government meets this burden in the instant case, then the appeal and collateral attack waiver provisions of Petitioner's plea agreement are enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (per curiam) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1146-47 (11th Cir. 1997).

Here, Respondent has met its burden in demonstrating the existence of a valid collateral attack waiver. The plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to collaterally attack his sentence "in any post-conviction proceeding, including a § 2255 proceeding." CR 110-041, doc. no. 43, pp. 4-5. Moreover, Judge Hall thoroughly reviewed the terms of the plea agreement during the plea colloquy, with particular emphasis on the significance of the appeal and collateral attack waiver provision. Id., doc. no. 57, p. 20. After Judge Hall concluded his review of the plea agreement, Petitioner acknowledged that he understood and agreed with the terms of the plea agreement as explained

---

[3]Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. See United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365-67 (N.D. Ga. 2004).

by Judge Hall. Id.

While Petitioner would have the Court ignore his responses to Judge Hall's questions, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court therefore demonstrates that the collateral attack waiver was knowing and voluntary. Thus, the Court concludes that the collateral attack waiver is valid. Of course, the Court is aware that Petitioner has also challenged the assistance of counsel in entering into the plea agreement, claims which, if found to have merit, would cast doubt on whether Petitioner validly waived his right to collaterally attack his sentence. However, as discussed infra, the Court determines that these claims lack merit, thus supporting the conclusion that Petitioner validly waived his right to a collateral post-conviction attack of his sentence.

Thus, all of Petitioner's claims in Ground Two are barred from review. Moreover, "An ineffective assistance of counsel argument survives a waiver of appeal [or collateral attack] only when the claimed assistance directly affected the validity of that waiver or the plea itself." Williams v. United States, 396 F.3d 1340, 1342 n.2 (11th Cir. 2005) (quoting United States v. White, 307 F.3d 506, 508-09 (5th Cir. 2002)). Applying this principle, the Eleventh Circuit concluded in Williams that the petitioner's ineffective assistance of counsel claims concerning his counsel's representation at sentencing were covered by the collateral attack waiver in the plea agreement, as the claims "[did] not concern representation relating to the validity of the plea or waiver." See id. Therefore, Petitioner's claim in Ground One that counsel was ineffective for failing to object to the enhancements to Petitioner's sentence under § 924(e) – i.e., that counsel was ineffective at sentencing – is also barred from review.

## 2. Ineffective Assistance of Counsel Claims Not Barred by Waiver

Notwithstanding the above analysis, some claims of ineffective assistance of counsel can survive a valid waiver. In particular, the Eleventh Circuit recognizes that "there may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing or a claim challenging the validity of the plea or agreement." Williams, 396 F.3d at 1342; see also Vaca-Ortiz, 320 F. Supp. 2d at 1365 ("[T]he court notes that a criminal defendant could not waive the right to bring a claim for ineffective assistance of counsel in which he alleges ineffectiveness at the time he was entering the plea or ineffectiveness related to advice he received regarding the waiver."). As two of Petitioner's claims in Ground One purport to challenge his counsel's performance as it relates to the validity of his plea or waiver (inasmuch as he alleges that his counsel failed to request a competence evaluation before he entered his guilty plea and failed to investigate his prior convictions (doc. no. 1, pp. 21, 25)), these claims are not barred by the provision in the plea agreement waiving Petitioner's right to collaterally attack his sentence.

That having been said, ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to Petitioner. Massaro v. United States, 538 U.S. 500, 505 (2003). First, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In applying this test, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance[.]" Id.; see also Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing "that petitioner was not entitled to error-free representation"). "A petitioner must overcome a strong presumption of competence, and the court must give significant

deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Second, Petitioner must establish prejudice by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In the context of a guilty plea, the Court must normally inquire as to whether counsel's performance affected the outcome of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

In applying the Strickland components outlined above, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). For as the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations omitted).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). As the Eleventh Circuit has

succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Id. at 1511.

Here, for the reasons explained in greater detail below, Petitioner has failed to show that the outcome of the proceeding would have been different if his counsel requested a competence evaluation or investigated his prior convictions, and he also fails to show counsel's performance was deficient with respect to his claim about the failure to request a competence evaluation. Moreover, Petitioner's ineffective assistance of counsel claims fail to establish that his guilty plea was not entered into knowingly and voluntarily. See infra Part II.D.

### a. Counsel's Alleged Failure to Request Competence Evaluation

Petitioner first makes the vague contention that "[s]omewhere down the line his attorney should have requested a competence evaluation[.]" (Doc. no. 1, p. 21.) In evaluating claims of ineffective assistance of counsel premised on an alleged failure to investigate particular issues or defenses, including those related to the defendant's competence, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Williams v. Head, 185 F.3d 1223, 1236 (11th Cir. 1999) (quoting Strickland, 466 U.S. at 691). "[T]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Bertolotti v. Dugger, 883 F.2d 1503, 1512 (11th Cir. 1989) (quoting Strickland, 466 U.S. at 691)). Thus, the presence or absence of information

that should signal questions about a defendant's competence is highly relevant, and counsel's performance will not be held constitutionally ineffective for failure to investigate matters not brought to his attention or otherwise apparent from the totality of the circumstances. See Bertolotti, 883 F.2d at 1515-16 (finding that, despite awareness of some facts indicating mental health issues, counsel made reasonable decision not to hire mental health expert, pursue mental health-based defenses to government's charges, or present evidence of psychological problems at sentencing); Funchess v. Wainwright, 772 F.2d 683, 689 (11th Cir. 1985) (finding no ineffective assistance for failure to investigate and present evidence of "extreme mental and emotional disturbance" where defendant never told counsel of any past psychological problems and there was nothing in recent evaluations "to cause [counsel] to even suspect that [defendant] might have a past history of psychological problems"); cf. Williams, 185 F.3d at 1237 ("An attorney does not render ineffective assistance by failing to discover [evidence] that his client does not mention to him.").

Here, Petitioner repeatedly emphasizes his purportedly limited intellect, but he sets forth no allegation that he gave his attorney any indication that he was intellectually deficient or otherwise lacked competence to enter his guilty plea. Rather, Petitioner alleges, without explanation, that his attorney "took advantage of his intellect," (doc. no. 1, p. 25), and "was suppose[d] to protect Petitioner on a much higher scale than an average client," (doc. no. 7, p. 2). The only evidence of record that even arguably calls into question Petitioner's intellectual capabilities, however, came either at the Rule 11 hearing or in the PSI. At the Rule 11 hearing, when asked if he could read and write, Petitioner answered "Some. Yeah. Yeah, not good," CR 110-041, doc. no. 56, p. 9, and the PSI indicates that Petitioner's cumulative grade point average when he dropped out of the ninth grade in 1984 was 0.5 on a 4.0 grading scale, PSI

¶ 63. Assuming for the moment that these facts would even call Petitioner's competence into doubt, neither was revealed before the Rule 11 hearing where Petitioner entered his guilty plea. Petitioner makes no allegation that he ever put counsel on notice before that time that he suffered from any intellectual deficiency that rendered him incompetent to enter a plea. Thus, Petitioner has failed to allege that counsel's performance "during pre-trial negotiations with the government," (doc. no. 1, p. 21), was deficient in this respect. See Funchess, 772 F.2d at 689 (emphasizing defendant's failure to provide counsel with any indication of past psychological problems and lack of information that would lead counsel to suspect the existence of such problems).

Moreover, Petitioner shows no prejudice from his counsel's failure to request a competence evaluation. Most problematically for Petitioner, simply suffering from low intelligence or a lack of education does not render a defendant incompetent to enter a guilty plea. See Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (noting that "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."); Cobbs v. McDonough, No. 5:05cv219-SPM/MD, 2006 WL 2092381, at *12 (N.D. Fla. July 26, 2006) (petitioner could not show prejudice from counsel's failure to investigate competence because "according to petitioner all she would have discovered was his low intelligence and limited education, not signs of mental incompetence to stand trial."); see also Godinez v. Moran, 509 U.S. 389, 396-97 (1993) (standards for competence to stand trial and enter guilty plea are same). In any event, Petitioner's present allegations that he "cannot read or write with any skills or understand what 2 + 2 is" (doc. no. 7, p. 2) are belied by his sworn testimony at the Rule 11 hearing, particularly that he could read and write "some" and his repeated assertions that he understood the nature of the charges

against him, the rights he was giving up by pleading guilty, the terms of his plea agreement, and the consequences of his plea. CR 110-041, doc. no. 56, pp. 7, 10-15, 18-25. As previously noted, the Court declines to ignore Petitioner's "solemn declarations in open court," which "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Finally, by signing the voluminous briefing in support of the instant § 2255 motion (see doc. no. 1, p. 44; doc. no. 7, p. 12), Petitioner is presumably certifying that he has reviewed and understands the contents therein, further undermining his claims of an intellectual or educational deficiency so overwhelming as to render him incompetent to enter a guilty plea. Petitioner accordingly fails to show any prejudice from his attorney's failure to raise the issue of Petitioner's competence before the guilty plea.

### b. Counsel's Alleged Failure to Investigate Prior Convictions

Next, Petitioner alleges that counsel was ineffective for failing to investigate "the legal authentication of the alleged priors" used to enhance his sentence. (Doc. no. 1, p. 25.) Petitioner alleges that he was prejudiced by counsel's alleged failure to investigate because his conviction for possession with intent to distribute cocaine was in fact only a conviction for simple possession, and his burglary conviction was not a "violent felony" for purposes of 18 U.S.C. § 924(e).[4] Accordingly, Petitioner contends that neither felony could be properly used to enhance his sentence under § 924(e), and that had counsel performed this investigation, he would not have "misled" Petitioner into pleading guilty to § 924(e) and the mandatory

---

[4]According to the PSI, these were two of the requisite three convictions which qualified Petitioner for an enhanced sentence under § 924(e), and thus as an "armed career criminal" under U.S.S.G. § 4B1.4. See PSI ¶ 23 (citing PSI ¶¶ 27 & 28).

minimum sentence to which it exposed him. (Doc. no. 1, p. 25.) The Court will address Petitioner's claims with respect to each of the two convictions at issue.

Petitioner first alleges that the conviction for possession with intent to distribute cocaine that he admitted to having in open court was in fact only a "simple possession." (Doc. no. 1, p. 32.) As noted earlier, however, "solemn declarations in open court [at a Rule 11 hearing] carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely.") Perhaps unsurprisingly, then, a petitioner who alleges ineffective assistance of counsel for failure to investigate the validity of his prior convictions is unable to show prejudice when he attested to the existence of those very convictions at his Rule 11 hearing. See Brown v. United States, Nos. CV 410-032, CR 408-249, 2010 WL 1929829, at *3 (S.D. Ga. Apr. 22, 2010) adopted by 2010 WL 1929825 (S.D. Ga. May 12, 2010) (petitioner not prejudiced by counsel's alleged failure to investigate his status as convicted felon where he "admitted under oath at the plea hearing that he has two felonies on his record," as his "unsupported allegations to the contrary" failed to overcome the presumption of truth attached to his sworn testimony); Ruff v. United States, Nos. CV 107-044, CR 104-062, 2008 WL 4592959, at *6 (S.D. Ga. Aug. 29, 2008), adopted by 2008 WL 4592959 (S.D. Ga. Oct. 14, 2008) (petitioner failed to show prejudice from counsel's alleged failure to investigate the validity of his prior convictions where petitioner admitted to the prior convictions during his Rule 11 hearing and did not object to the listing and description of those offenses in the PSI at sentencing).

Here, Petitioner takes his counsel to task for allegedly not investigating his conviction

for possession with intent to distribute cocaine, which was listed in his indictment. Yet Petitioner nowhere acknowledges, let alone explains why he swore affirmatively when Judge Hall asked him if he had committed possession with intent to distribute cocaine, or why he signed a plea agreement reciting the same. Even if Petitioner relied on counsel to verify that his prior convictions could be authenticated, Petitioner does not explain why he would not only fail to object, but would indeed admit on multiple occasions to having committed an offense if he in fact did not. Nor has Petitioner submitted any documentation with his § 2255 motion in support of his allegation that his prior conviction was for something other than possession with intent to distribute cocaine. In short, Petitioner has offered nothing more than the self-serving, unsupported allegation that the conviction was for a "simple possession," which is insufficient to overcome the presumption of truth afforded his sworn testimony that he had a prior conviction for possession with intent to distribute cocaine. See Brown, 2010 WL 1929829, at *3. To that end, Petitioner shows no prejudice from counsel's alleged failure to investigate his conviction for possession with intent to distribute cocaine.

Petitioner also fails to show he was prejudiced by the alleged failure by counsel to investigate his burglary conviction. Unlike his conviction for possession with intent to distribute cocaine, Petitioner does not dispute in the instant § 2255 motion that he has a prior conviction for burglary. Because of the requirements imposed by Taylor v. United States, 495 U.S. 575 (1990), however, Petitioner is correct that simply having been convicted of burglary in Georgia is not enough for his federal sentence to have been properly enhanced by the conviction under § 924(e), because Georgia's burglary statute is "non-generic." See United States v. Adams, 91 F.3d 114, 116 (11th Cir. 1996) (*per curiam*). According to Taylor, for a burglary to constitute a "violent felony" under § 924(e), it must be "generic," meaning its

17

elements include at least: "[A]n unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598. Here, according to the PSI, Petitioner's burglary conviction was for "enter[ing] the home of [victim] . . . with the intent to commit a theft." PSI ¶ 27. In short, the information in the PSI reflects that Petitioner's conviction was indeed for a "generic" burglary. See Adams, 91 F.3d at 116.

Thus, Petitioner can allege no prejudice because his claim that his burglary did not qualify under § 924(e) is belied by the record. See Brown, 2010 WL 1929829, at *3 (petitioner not prejudiced by counsel's alleged failure to investigate his status as convicted felon in part because his PSI showed he had a felony conviction and petitioner presented only "unsupported allegations to the contrary"). Here, Petitioner alleges that counsel was ineffective for failing to investigate his burglary conviction because, presumably, by investigating it, counsel would have discovered that the burglary could not properly be used to enhance his sentence, and would not have advised Petitioner to plead guilty to being a felon in possession of a firearm. Yet the PSI shows that Petitioner's burglary conviction did qualify for § 924(e). While Petitioner states that he "objects to the factual basis for the convictions" listed in his PSI, he nowhere contends that his 1986 burglary conviction did not involve the entry of a residence with the intent to commit a theft or offers any details showing that his conviction was in fact for a non-generic burglary.[5]

---

[5]Rather, Petitioner makes a misguided *legal* argument for why his burglary conviction did not qualify for purposes of § 924(e). Petitioner contends that "[t]here has to be some sort of threat or physical risk of physical violence against any individual in connection with a crime to even justify" the requirements of § 924(e). (Doc. no. 1, p. 31.) Notably, the Supreme Court of the United States expressly considered and rejected this argument based on the language of § 924(e). See Taylor, 495 U.S. at 596-97 ("The most likely explanation, in view of the legislative history, is that Congress thought that certain general categories of property crimes – namely burglary, arson, extortion, and the use of explosives – so often

18

In other words, Petitioner cannot allege prejudice from any supposed failing of counsel where the conduct he asserts counsel should have undertaken would have been fruitless. See, e.g., United States v. Thrift, 8:96-CR-83-T-23TBM, 2005 WL 3052295, at *3 (M.D. Fla. Nov. 14, 2005) (petitioner failed to show prejudice from counsel's alleged failure to *challenge* use of prior burglary conviction to enhance sentence where he "[did] not contend that the 1978 burglary conviction did not involve a residence," and he did not present "any evidence to show that the 1978 burglary conviction did not meet the definition of a 'generic' burglary," as it was shown to be by the facts in the PSI). Thus, Petitioner's claim that he was somehow prejudiced by counsel's failure to investigate his burglary conviction is belied by the PSI, which shows that the prior conviction qualified under § 924(e), and Petitioner has presented nothing contradicting the record in that regard. Accordingly, Petitioner does not show he was prejudiced by his counsel's alleged failure to investigate his burglary conviction.

Therefore, Petitioner has failed to show either deficient performance or prejudice with respect to his claim that counsel was ineffective for failing to request a competence evaluation. See Strickland, 466 U.S. at 687; Hill, 474 U.S. at 59. Moreover, with respect to his claim that counsel was ineffective for failing to investigate his prior convictions, Petitioner cannot show that he suffered prejudice as a result of the alleged error by counsel. See id. Thus, Petitioner is not entitled to relief on these claims of ineffective assistance of counsel.

### D.     Petitioner's Guilty Plea Was Knowing and Voluntary

Finally, having resolved Petitioner's claims of ineffective assistance of counsel before

---

presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.") (emphasis added).

entry of the plea, the Court will address the knowing and voluntary nature of his guilty plea. Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 574 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows:

> "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights." A plea of guilty "cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Aside from the obvious involuntariness of a coerced plea, the Supreme Court has identified two other ways that a defendant's guilty plea may be involuntary in a constitutional sense:
>
>> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.
>
> As the Supreme Court has plainly instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the charged crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"

United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal citations omitted). The Eleventh Circuit has further explained that, for a guilty plea to be made knowingly and voluntarily, the court accepting the guilty plea must "specifically address three 'core

principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Here, the extensive plea colloquy conducted by Judge Hall addressed each of the aforementioned "core principles." Moriarty, 429 F.3d at 1019. Judge Hall conducted questioning to determine that Petitioner was mentally competent to plead guilty. CR 110-041, doc. no 56, pp. 7-10. Judge Hall explained the rights that Petitioner would waive by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 10-14. Petitioner then testified that he had reviewed the plea agreement with his attorney before he signed it, and that he understood that he was agreeing that whatever facts were contained in the agreement were true. Id. at 18-19. Judge Hall outlined the minimum and maximum penalties that might be imposed in the event of conviction, and Petitioner affirmed that he understood. Id. at 21. Petitioner also averred, in response to questions asked by Judge Hall, that no one had promised him a specific sentence, or "anything to get [him] to come to court and plead guilty." Id. at 23-24. He further swore that no one had "forced" or "pressured" him to plead guilty. Id. at 24.

In short, Judge Hall's thorough plea colloquy ensured that Petitioner's guilty plea was free from coercion and that Petitioner understood both the nature of the charge to which he was pleading guilty and the consequences of his plea. See Moriarty, 429 F.3d at 1019. The record is therefore clear as to the intelligent and voluntary entry of Petitioner's guilty plea, and, as explained in greater detail supra, Petitioner fails to show otherwise by asserting that his

attorney failed to request a competence evaluation or to investigate his prior convictions. See Part II.C. As Respondent persuasively argues, Petitioner's allegations of counsel's failings do not undermine the "core principles" ensuring the knowing and voluntary nature of his guilty plea. (See doc. no. 6, pp. 16-17.) Furthermore, Petitioner nowhere contests his admission of guilt, but rather contends that he "would have accepted a proposed and beneficial plea agreement" rather than one with the potential for an enhanced sentence under the "Armed Career Criminal Act." (Doc. no. 1, p. 27.) This bare allegation falls well short of establishing a reasonable probability that he would not have pled guilty but for his counsel's alleged errors. See Moriarty, 429 F.3d at 1020. Accordingly, the Court finds that Petitioner's guilty plea was entered knowingly and voluntarily.

In sum, Petitioner is not entitled to relief on either of the grounds asserted in his § 2255 motion. Respondent's motion to dismiss the § 2255 motion in its entirety should therefore be granted.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED** (doc. no. 6), that the instant § 2255 motion be **DISMISSED** without an evidentiary hearing, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 15th day of January, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

22